CE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL H. SINGER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 11-CV-8771 |
| CHARLES R. FELDSTEIN & CO., INC.; | ) |
| CHARLES R. FELDSTEIN; | ) Judge John W. Darrah |
| and JAMES F. FELDSTEIN, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul H. Singer filed his Verified Complaint on December 9, 2011, against Defendants Charles R. Feldstein & Co., Inc.; Charles R. Feldstein; and James F. Feldstein; alleging Defendants: (1) breached fiduciary duties in violation of the Employee Retirement Income Security Act ("ERISA") by failing to prudently manage assets of a retirement plan; (2) breached fiduciary duties in violation of ERISA by failing to engage independent fiduciaries to monitor a retirement plan; and (3) breached a contract between the parties under the State of Illinois common law. Defendants filed a Motion to Dismiss Singer's Complaint, arguing all of Singer's claims are barred by relevant statutes of limitations.

### BACKGROUND

Singer's Complaint alleges the following facts. Singer was an employee of Charles R. Feldstein & Co., Inc. ("the Company"), from October of 1968 to

December 31, 2000. (Compl. ¶ 18.) The Company is an Illinois corporation, located in Chicago, Illinois, and provides fundraising consulting services. (*Id.*, ¶ 11.) Defendant Charles F. Feldstein ("Charles") has served as the Company's Chairman since 1953 and is the father of Defendant James F. Feldstein ("James"). (*Id.*, ¶¶ 12, 24.) James has served as the Company's President for over twenty years. (*Id.*, ¶ 13.) After leaving the Company at the end of 2000, Singer returned on January 1, 2009, and worked as a Senior Advisor for the Company through January 30, 2010. (*Id.*, ¶ 18.)

During the course of Singer's initial employment with the Company, he was a participant in its Profit Sharing Plan and Trust ("the Plan"). (*Id.*, ¶ 1.) Since approximately 1974, the Company had sponsored the Plan and was a fiduciary of the Plan under the meaning of ERISA § 3(21): the Company "exercised authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan." (*Id.*, ¶ 11.) *See* 29 U.S.C. § 1002(21). Charles and James served as Trustees of the Plan and were also fiduciaries of the Plan. The Plan's assets were to be held in trust for the benefit of the participants and their beneficiaries; the Plan's purpose was to assist the Company's employees in accumulating capital for retirement. (*Id.*, ¶¶ 16-17.)

Each Plan participant had an individual account and was permitted to defer a portion of his base compensation for investment in the Plan. (*Id.*, ¶¶ 18-19.) Singer participated in the Plan from July 1, 1969 to December 31, 2000. (*Id.*, ¶ 18.) At the end of his participation in the Plan, approximately $135,975.31 was held in Singer's

individual account. Under the Plan, Singer was permitted to withdraw this entire balance in a lump-sum payment. (*Id.*, ¶ 19.) However, Singer alleges he did not receive this money at the time of his retirement. (*Id.*, ¶ 23.)

James, Administrator of the Plan, began making improper loans from the Plan to the Company, beginning in 1987. As of 2000, the Plan had improperly loaned over $1,314,916.00 to the Company, and these loans had not been repaid. (*Id.*, ¶¶ 21, 25.) These loans violated the terms of the Plan and ERISA. (*Id.*, ¶ 22.) Defendants coordinated with Singer and agreed to pay him through an extended distribution schedule, with interest; yet, despite this agreement, Singer is still owed over $129,285.26 from his contributions to the Plan. (*Id.*, ¶¶ 26-28.)

Defendants also refused to satisfy their obligations due to him under the Stock Redemption Agreement ("Stock Agreement"), dated July 18, 1990. (*Id.*, ¶ 29.) This agreement issued Company stock to Singer and specified a $50,000 stock redemption price if Singer redeemed the stock at the end of ten years. (*Id.*) The $50,000 was to be paid to Singer within ninety days of the termination of his employment and thus was due ninety days after he left the Company on December 31, 2000. (*Id.*) To date, Singer has only received a total of $20,000 from his stock redemption. (*Id.*, ¶ 30.)

Singer filed his Verified Complaint on December 9, 2011, following his second term of employment at the Company, which ended in early 2010. In Counts I and II of this Complaint, Singer claims Defendants breached their fiduciary duties by failing to prudently manage Plan assets and by failing to avoid conflicts of interest, and Singer seeks to recover benefits due to him under the plan, pursuant to ERISA § 502(a). (*Id.*, ¶¶

72, 79-80.) Finally, Count III of the Verified Complaint claims Defendants breached the terms of the Stock Agreement by failing to pay Singer the money due to him under the agreement following the termination of his employment. (*Id.*, ¶¶ 83-89.)

Defendants move to dismiss Singer's Complaint, arguing that all the claims alleged by Singer are barred by applicable statutes of limitations. This motion was fully briefed and is ripe for ruling.

## LEGAL STANDARD

To properly assert a claim in a complaint, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the relief sought." Fed. R. Civ. P. 8. A defendant may file a motion to dismiss a claim under Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*Iqbal*) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*)). While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "When considering a defendant's motion to dismiss, [the court] view[s] the complaint's

4

allegations in the light most favorable to the plaintiff." *Bontkowsi v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993) (*Bontkowski*) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)).

A complaint may fail to state a claim under Rule 12(b)(6) "[i]f the allegations of the complaint 'show that relief is barred by the applicable statute of limitations.'" *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 802 (7th Cir. 2008) (*Limestone*) (quoting *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920–21 (2007)). A statute of limitations defense "may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). While a complaint is not required to anticipate affirmative defenses and address them, "dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Management, LP*, 559 F.3d 671, 674-75 (7th Cir. 2009) (quoting *Hollander v. Brown*, 457 F.3d 688, 690 (7th Cir. 2006)).

## ANALYSIS

*Counts I and II: The ERISA Claims and the Statute of Limitations*

Count I of the Verified Complaint alleges Defendants failed to meet their fiduciary duties under ERISA, and their breach of these duties resulted in Singer and the Plan's other participants and beneficiaries not receiving the balance of their retirement accounts. Count II of the Verified Complaint alleges Defendants failed to hire independent fiduciaries to monitor the Plan and that this breach of fiduciary duty by

5

Defendants also resulted in Singer not receiving the balance of his retirement accounts. Defendants argue that these claims are barred by statutes of limitations.

Defendants assert it is unclear which statute of limitations should govern Singer's claims. Two statutes of limitations can govern ERISA claims. *Leister v. Dovetail, Inc.*, 546 F.3d 875, 878 (7th Cir. 2008) (*Dovetail*). The first, 29 U.S.C. § 1113, provides that a plaintiff alleging "'a fiduciary's breach of any responsibility, duty, or obligation under' sections 1101 to 1114 has the shorter of six years from the date of the breach to file suit or (with an immaterial exception) three years "after the earliest date on which the plaintiff had actual knowledge of the breach.'" *Id.* The other statute of limitations is applicable in suits where a plaintiff seeks to recover benefits due under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). "If this is the governing provision, the borrowed statute of limitations would be Illinois's 10-year statute of limitations for breach of a written contract." *Dovetail*, 546 F.3d at 878 (citing 735 ILCS 5/13-206). "To determine which statute of limitations properly applies, the nature of the plaintiffs' claims must be examined." *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 465 (7th Cir. 1991).

In Singer's Complaint, he invokes ERISA § 502(a) in both Counts I and II, thereby seeking to recover benefits due to him under the Plan, and also states, "This is a civil enforcement action brought pursuant to § 502(a)(1)(B) of the [ERISA], 29 U.S.C. § 1132(a)(1)(B), on behalf of Plaintiff as a participant in the Plan, to remedy the fiduciary breaches committed by [Defendants]." (Compl. ¶ 4.) *See also Bontkowsi*, 998 F.2d at 461 (finding allegations in a complaint are to be viewed in a light most favorable to the plaintiff). Therefore, because Singer brings his claims under Section 502(a), the statute

of limitations applicable to Singer's ERISA claims is the Illinois 10-year statute of limitations for breach of a written contract. 735 ILCS 5/13-206. Defendants argue that, no matter which statute of limitations is applied, Singer's ERISA claims are barred as untimely. (Defs.' Mem. at 6.)

To determine if this statute of limitations bars Singer's ERISA claims, the accrual of his claims must be established. "Even when relying on an analogous state statute of limitations, as in this case, we look to federal common law for purposes of determining the accrual date of a cause of action under a federal statute such as ERISA." *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996) (*Daill*). Because Section 502(a)(1)(B) of ERISA prevents participants from being denied their benefits under retirement plans, a plaintiff accrues a cause of action under this section of ERISA when a claim for benefits is denied. *Id.* Specifically, the Seventh Circuit has found that a claim to recover benefits under Section 502(a) accrues "upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary." *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 816 (7th Cir. 2010) (quoting *Daill*, 100 F.3d at 66). Therefore, Singer's claims under Section 502(a) did not accrue until he received a clear repudiation of his claim to be paid his lump sum under the Plan.

Defendants argue Singer received a clear repudiation of his claim to be paid his lump sum on February 26, 2001, when, as Singer alleges, James Feldstein "reached out to Singer . . . and proposed an extended distribution schedule, together with interest." (Compl. ¶ 26.) Singer stated in a letter to James that he believed "the Profit Sharing Plan

does not provide for payment over an extended period" however, he acquiesced to the extended payment schedule proposed by Defendants. (Compl. Ex. A(4).) At this point, Defendants argue, Singer had knowledge that Defendants did not intend to pay him under the terms of the Plan, which called for a lump-sum ninety days after his employment was terminated. However, both Singer and Defendants ignore the language of the Plan, which further provides that a participant may elect to have his benefits distributed by "[p]ayments over a period certain in monthly, quarterly, semiannual, or annual cash installments." (Compl. Ex. B, Profit Sharing Plan and Trust Section 6.5(a)(ii).) Therefore, Defendants' suggestion and Singer's agreement to receive his benefit payments on a nine-month distribution schedule was not a clear repudiation of his claim for benefits due to him under the Plan. To the contrary, allegations that Defendants offered an extended distribution schedule reasonably imply Defendants intended to pay Singer his Plan benefits.

The Complaint further alleges that after agreeing to an extended payment schedule for the Plan, Singer received some payments from Defendants, though not on the payment schedule agreed to by Singer. Singer received payments from Defendants amounting to $65,000.00 in 2001 and $35,000 in 2002, but not without having to complain and remind Defendants of their obligations under the extended payments schedule. (Compl. Ex. A-7, A-8.) Because Singer received payments, albeit, late, from Defendants, it is reasonable to infer he received no clear, unequivocal repudiation of his rights under the Plan. Rather, even into late 2008, Singer was in communications with James to discuss a payout schedule for the Plan payments due to him, and James stated

his "appreciation for [Singer's] forebearance [sic] over the last number of years . . ." (Compl. Ex. A-12, A-13.) No facts alleged establish *any* clear and unequivocal repudiation by Defendants of Singer's rights to receive his benefits under the Plan. Based on the facts alleged, Defendants did not stop Singer's Plan payments until some time in 2002. Thus, to the extent that Defendants' silence or omissions (by lack of payment) might have established a repudiation of Singer's rights[1], this repudiation did not come until at least 2002. As the applicable statute of limitations governing Singer's ERISA claims is ten years, even if Defendants' repudiation came in 2002, when Defendants stopped making payments under the Plan, Singer's ERISA claims are not barred by the statute of limitations.[2]

*Count III: Breach of Contract Claim*

Count III of the Verified Complaint alleges Defendants breached the terms of the Stock Agreement by failing to pay Singer the money due to him under the terms of the agreement following the termination of his employment in December 2000. Under the terms of the Stock Agreement, Singer was to receive a stock redemption worth $50,000 within ninety days of the termination of his employment. (Compl. ¶ 8.)

---

[1] However, it is difficult to see that Defendants' possible omissions, or Defendants' simply ignoring obligations due to Singer, as a "clear and unequivocal repudiation" as required by the law. *Daill*, 100 F.3d at 66.

[2] Singer also asserted that the statute of limitations is tolled under the doctrine of equitable estoppel based on the alleged conduct of Defendants, discussed above. Defendants reply that equitable estoppel does not apply under the facts of this case (Reply at 8.) However, factual determinations such as those raised by Defendants may not be resolved on a motion to dismiss. Regardless, the issue of equitable tolling need not be addressed based on the above analysis and ruling.

Under Illinois law, a breach of contract action must commence "within 10 years next after the cause of action accrued." 735 ILCS 5/13-206. The Illinois statute further provides, ". . . but if any payment or new promise to pay has been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay." 735 ILCS 5/13-206. Defendants argue that the statute of limitations on Singer's breach of contract claim began to run at the moment Plaintiff was aware of the breach: specifically, Singer's claim accrued on March 31, 2001, when Singer's payment under the Stock Agreement was due and not paid to him.

Despite the fact that the Stock Agreement provided that "payment for Singer . . . Shares purchased hereunder shall be made within 90 days after termination . . . by . . . certified or cashier's check," Defendants proposed an extended payout period for the stock redemption in a letter to Singer on February 26, 2001. (Compl. Ex. A-3, A-4.) On March 20, 2001, Singer received payment from Defendants, designated as "Payment towards redemption of shares #1." (Compl. Ex. A-5.) "Defendants paid Singer $10,000 between March and May 2001 on the $50,000 [Stock Agreement] obligation." (Compl. ¶ 30.) Then, "[m]ore than six years later, in 2008, Defendants paid Singer an additional $10,000 on the $50,000 obligation." (*Id.*) Accepting the facts alleged in Singer's Complaint to be true, Defendants "re-set" the clock on the breach of contract statute of limitations by paying Singer additional money under the Stock Agreement. 735 ILCS 5/13-206 (providing that a claim for breach of contract may be commenced within ten

years after a payment is made under a written contract). Therefore, Singer's claim for breach of contract is not barred under the applicable statute of limitations.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is denied. None of the claims raised in Singer's Verified Complaint are time-barred by statutes of limitations.

Date: 6-14-12

JOHN W. DARRAH
United States District Court Judge